IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH ANGLIN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-60-GPM |
| | ) |
| BRISTOL-MYERS SQUIBB COMPANY, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This lawsuit concerns personal injuries allegedly caused by Plavix, a prescription medication manufactured and distributed by Defendants Bristol-Myers Squibb Company, Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis, U.S., Inc., and Sanofi-Synthelabo, Inc. This case was filed originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, and comes to this Court on removal from state court. Federal subject matter jurisdiction is alleged by Defendants on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Plaintiffs in the case are, in addition to Kenneth Anglin: Carol Bayona, individually and on behalf of Lynn Bayona, deceased; Julie Bellcock; Carol Buelt, individually and on behalf of Glen Buelt, deceased; Heidi Creamer; Mary DePrima; Joanna Dietelbach; Joseph Dinatale; Charlie Dollar; Gloria Dottery; Vivian English; Charles Everett; E. Larry Fabian; Louis Fontano; Anthony Frisone; Wayne Gee; Wanda Gile; Kim Grissom; Nell Hailey; Donna Hamilton; Linda Hayes; Ralph Helms; Eric Horton; Joseph Jackiewicz; Brenda Jackson; Edward Jaworski;

Patrick Lemmo; Donald Lolio; Edwina Lowe; Winnie Manucy; Sherman Mashburn; Lenora McDaniel; Robert McKenzie; Daniel McLinden; Barbara Chirafisi, individually and on behalf of Helen Molinari, deceased; Evelyn Mounts; Dennis Muffley; Anthony Page; Carolyn Peoples; George Porterfield; Garland Powell; Tommie Pugues; Joyce Rafferty, individually and on behalf of Michael Rafferty, deceased; Julie Rasband; James Reitberger; Elizabeth Romero; Vivion Severns; Penny Lane, individually and on behalf of Bill Shoffner, deceased; Marcus Shultz, individually and on behalf of Barbara Shultz, deceased; Janet Simmonds; Catherine Smith; Escham Smith; Kendall Smith; Margaret Smith; Henry Spann; Leroy Sweat; Glenda Thomas; Hubert Thornton; Richard Warner; Edith Williams; Paul Williams; Ola Williams; Suzanne Wilson; Allen Wilson; Sandra Wright; Barbara Youmans; and Myrna Peters  Currently this matter is before the Court on Plaintiffs' motion for remand of this case to state court for lack of federal subject matter jurisdiction in diversity (Doc. 12).[1]

---

1.  This perhaps is the place to note that Defendants have moved for dismissal of most of the claims in this case for lack of personal jurisdiction. *See* Doc. 10. However, the Court has elected to address the issue of subject matter jurisdiction, that is to say, its fundamental authority to entertain this case, before addressing issues of personal jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Id*. at 94-95 (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)) (brackets omitted). *See also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (noting that neither personal jurisdiction nor venue is "fundamentally preliminary" in the sense that subject matter jurisdiction is, because both are personal privileges of a defendant, rather than absolute strictures on a court, and both may be waived by the parties). *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) ("Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.").

As an initial matter the Court notes the standard under which it must evaluate the instant motion for remand. Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal, as the proponent of federal subject matter jurisdiction, has the burden of proof as to the existence of such jurisdiction. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *Brill v. Countrywide Home Loans*, 427 F.3d 446, 447-49 (7th Cir. 2005); *Bemis v. Safeco Ins. Co. of Am.*, Civil No. 09-315-GPM, 2009 WL 1972169, at *2 (S.D. Ill. July 8, 2009); *Welch v. Norfolk S. Ry. Co.*, Civil No. 09-209-GPM, 2009 WL 2365596, at *1 (S.D. Ill. May 27, 2009); *Kuntz v. Illinois Cent. R.R. Co.*, 469 F. Supp. 2d 586, 589 (S.D. Ill. 2007). "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.' Put another way, there is a strong presumption in favor of remand." *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Finally, "[d]oubts concerning removal must be resolved in favor of remand to the state court." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006). *See also Stephens v. A.W. Chesterton, Inc.*, Civil No. 09-633-GPM, 2009 WL 3517560, at *1 (S.D. Ill. Oct. 22, 2009) ("Any doubts about the propriety of removal must be resolved against removal and in favor of remand to state court."); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000) ("The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand."). With the foregoing standard in mind, the Court turns to consideration of Plaintiffs' motion for remand.

In their notice of removal, Defendants assert two bases for removal: first, that this case is removable under CAFA as a "mass action"; and second, that the claims in this case have been "fraudulently misjoined" or "procedurally misjoined" to defeat diversity jurisdiction. The Court turns first to the issue of whether this case is a CAFA mass action. A mass action within the meaning of CAFA is: (1) a civil action commenced on or after February 18, 2005, in which monetary relief claims of one hundred or more persons are joined; (2) the plaintiffs' claims are proposed to be tried jointly on the ground that the claims involve common questions of law or fact; (3) there is minimal diversity of citizenship, that is, at least one plaintiff is not a citizen of the same state as at least one defendant; and (4) the plaintiffs each seek a recovery exceeding $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761-62 (7th Cir. 2008); *Mobley v. Cerro Flow Prods., Inc.*, Civil No. 09-697-GPM, 2010 WL 55906, at *2 (S.D. Ill. Jan. 5, 2010); *Brown v. Cerro Flow Prods., Inc.*, Civil No. 09-582-GPM, 2010 WL 55905, at *2 (S.D. Ill. Jan. 4, 2010); *Schillinger v. 360Networks USA, Inc.*, Civil No. 06-138-GPM, 2006 WL 1388876, at *2 (S.D. Ill. May 18, 2006) (quoting Pub. L. 109-2, § 9, 119 Stat. 4). Additionally, CAFA authorizes removal of mass actions from state court to federal court. *See* 28 U.S.C. § 1332(d)(11)(A); 28 U.S.C. § 1453(b); *Anderson v. Bayer Corp.*, Civil No. 09-988-GPM, 2010 WL 148633, at *2 (S.D. Ill. Jan. 13, 2010); *Clayton v. Cerro Flow Prods., Inc.*, Civil No. 09-550-GPM, 2010 WL 55675, at *2 (S.D. Ill. Jan. 4, 2010); *Gilmore v. Bayer Corp.*, Civil No. 09-986-GPM, 2009 WL 4789406, at *2 (S.D. Ill. Dec. 9, 2009). As already has been noted, Defendants, as the removing parties, have the burden of proving that all of the prerequisites for the exercise of federal subject matter jurisdiction in diversity under CAFA are met.

The glaring defect in the removing Defendants' theory of CAFA jurisdiction in this case is that the case contains only sixty-seven Plaintiffs, short of the 100 plaintiffs required for the exercise of diversity jurisdiction over a mass action. Defendants argue that the statutory minimum number of plaintiffs is satisfied in this instance because Plaintiffs in this case should be deemed by the Court to be parties to two other cases regarding personal injuries allegedly caused by Plavix that are pending before the Court on removal from state court, *Davidson v. Bristol-Myers Squibb Co.*, Civil No. 12-58-GPM (S.D. Ill. filed Jan. 19, 2012), and *Boyer v. Bristol-Myers Squibb Co.*, Civil No. 12-61-GPM (S.D. Ill. filed Jan. 19, 2012). According to Defendants, if the Court simply aggregates the claims of the Plaintiffs in this case with the those of the eighty-three plaintiffs in *Davidson* and the seventy-one plaintiffs in *Boyer*, then this case may be deemed to contain a grand total of 221 Plaintiffs. However, as Defendants concede, their theory of aggregating separate cases to satisfy the 100-plaintiff minimum for purposes of a CAFA mass action is expressly foreclosed by the decision of the United States Court of Appeals for the Seventh Circuit in *Anderson v. Bayer Corp.*, 610 F.3d 390 (7th Cir. 2010). In *Anderson* the court of appeals was confronted by four separate cases, none of which involved 100 or more plaintiffs but which the removing defendants argued contained, in the aggregate, 111 plaintiffs. *See id*. at 392. Noting that CAFA expressly excludes from its definition of a mass action cases that have been consolidated on a defendant's motion, the *Anderson* court said: "The mass action provision gives plaintiffs the choice to file separate actions that do not qualify for CAFA jurisdiction. The instant cases contain fewer than 100 plaintiffs and thus are not removable under the plain language of the statute." *Id*. at 393. The court said further that the removing defendants' "argument that these separate lawsuits be treated as one action is tantamount to a request to consolidate them – a request that Congress has explicitly stated

cannot become a basis for removal as a mass action." *Id*. at 393-94 (citing 28 U.S.C. § 1332(d)(11)(B)(ii)(II)). The court found the defendants' contention that the plaintiffs had deliberately divided their cases in order to avoid the mass action threshold irrelevant. "By excluding cases in which the claims were consolidated on a defendant's motion, Congress appears to have contemplated that some cases which could have been brought as a mass action would, because of the way in which the plaintiffs chose to structure their claims, remain outside of CAFA's grant of jurisdiction." *Id*. at 393. "This is not necessarily anomalous; after all, the general rule in a diversity case is that 'plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum.'" *Id*. (quoting *Garbie v. DaimlerChrysler Corp*., 211 F.3d 407, 410 (7th Cir. 2000)). The removing Defendants in this case lamely defend their defiance of the decision of the Seventh Circuit Court of Appeals in *Anderson* by arguing that *Anderson* "is incorrect." Doc. 2 at 3 ¶ 5. Be that as it may – and this Court does not believe that *Anderson* was wrongly decided – both the federal trial courts of this Circuit and litigants therein are bound to follow the decisions of the Seventh Circuit Court of Appeals, whether they believe those decisions are correct or not. *See Reiser v. Residential Funding Corp*., 380 F.3d 1027, 1029 (7th Cir. 2004) ("Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted); *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (citing *Colby v. J.C. Penney Co*., 811 F.2d 1119, 1123 (7th Cir. 1987)) ("A district court in Wisconsin must follow our decisions, but it owes no more than respectful consideration to the views of other circuits."). The removing Defendants in this case have simply flouted the law of this Circuit as set forth in *Anderson*, a subject to which the Court will return presently.

The Court turns next to Defendants' argument for removal based on the doctrine of fraudulent joinder to defeat diversity jurisdiction. In general, federal courts have jurisdiction in diversity in cases in which there is complete diversity of citizenship, that is, no plaintiff is a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(a)(1); *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). In the Seventh Circuit a defendant is fraudulently joined (1) when there has been outright fraud in a plaintiff's pleading of jurisdictional facts or (2) when a removing defendant meets the heavy burden of showing that there is no possibility that a plaintiff can state a cause of action against a non-diverse defendant in state court. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Here the removing Defendants allege neither fraud in Plaintiffs' pleading of jurisdictional facts nor that Plaintiffs cannot establish a cause of action against Defendants. Instead, the removing Defendants contend that the claims in this case have been "fraudulently misjoined" or "procedurally misjoined" to defeat diversity jurisdiction. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (misjoinder of viable, non-fraudulent claims amounts to fraudulent joinder if the misjoinder is "egregious").[2]

---

2. For the sake of simplicity, henceforth in this Order the Court will speak of fraudulent misjoinder, rather than procedural misjoinder. The misjoinder alleged in this case is that of the claims of Hayes, Chirafisi, Peoples, and Ola Williams, all of whom are citizens of Illinois, with the claims of DePrima, Dollar, Jackiewicz, Lemmo, Rafferty, and Suzanne Wilson, who are, like Defendants, citizens of New York and New Jersey, therefore defeating complete diversity of citizenship. *See* 28 U.S.C. § 1332(c)(1); *Fidelity & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983).

Neither the Seventh Circuit Court of Appeals nor the Supreme Court of the United States has had occasion to pass on the doctrine of fraudulent misjoinder. However, the familiar test of fraudulent joinder established through the decisions of the United States Supreme Court is whether "a resident defendant ha[s] no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (citing *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 185, 186 (1907)); *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). Similarly, the Seventh Circuit Court of Appeals has defined fraudulent joinder to mean that "a claim against an in-state defendant . . . simply has no chance of success, whatever the plaintiff's motives" in asserting the claim. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As controlling precedent makes clear, the doctrine of fraudulent joinder is concerned with whether a plaintiff can assert a viable, non-fraudulent claim against a non-diverse defendant, not with whether such claims have been joined correctly under state law. Thus, the United States Supreme Court instructs that when "the plaintiff has a right of action under the law of the state," the plaintiff also has the right "to insist upon [a non-diverse defendant's] presence as a real defendant," without regard to the propriety of joinder under state law. *Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915). Likewise, the Seventh Circuit Court of Appeals has cautioned that "[n]either [28 U.S.C.] § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal." *Garbie*, 211 F.3d at 410. *See also Chicago, Rock Island & Pac. R.R. Co. v. Stude*, 346 U.S. 574, 580 (1954) (state "procedural provisions cannot control the privilege of removal granted by the federal statute."); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941) (the right of removal is "unaffected by local law," such as state procedural rules);

*Southern Ry. Co. v. Lloyd*, 239 U.S. 496, 500 (1916) (holding that fraudulent joinder does not apply to "a cause of action, good upon its face"); *Illinois Cent. R.R. Co. of Ill. v. Sheegog*, 215 U.S. 308, 316 (1909) (holding that "[i]n the case of a tort which gives rise to a joint and several liability, the plaintiff has an absolute right to elect, and to sue the tort feasors jointly if he sees fit, no matter what his motive," and a charge that one of the tortfeasors was fraudulently joined to defeat diversity "would be bad on its face").

It is within the power of Congress, of course, to regulate the jurisdiction of the lower federal courts. *See* U.S. Const. art. I, § 8, cl. 9; U.S. Const. art. III, § 2, cl. 1. Therefore, if it wished, Congress could enact the fraudulent misjoinder doctrine into law, as indeed it has done, to some extent, in the provisions of CAFA dealing with mass actions. Federal courts have a limited power to legislate as well, in some instances, through the fashioning of federal common law. This is a highly circumscribed and limited power, however. As Justice Holmes famously explained, "judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions." *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 221 (1917) (Holmes, J., dissenting). Put more prosaically, federal courts have power to craft common law when necessary "to iron out inconsistencies within a statute or to fill gaps resulting from legislative oversight or to resolve ambiguities resulting from a legislative compromise." *United States Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 354 (1971). *See also United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593 (1973) ("[T]he inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts."). Nonetheless, although "[i]n almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions," it also is the case that "the authority to

construe a statute," in this instance, the statutory grant of diversity jurisdiction, "is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt." *Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 (1981). Moreover, in developing federal common law, the federal courts are not to "invade[ ] rights which . . . are reserved by the Constitution to the several states." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). In the Court's view, the creation of a federal common law of permissive joinder that competes with and displaces the rules governing such joinder developed by the states is far beyond the authority enunciated in *Erie*. Finally, it is well settled that federal courts have no authority to enlarge their jurisdiction by judicial decision. "Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922). "The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it." *Id*. Said differently, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In sum, the Court declines to adopt the fraudulent misjoinder doctrine.

   As a final matter, the Court addresses the issue of whether to compel Defendants to pay costs and expenses pursuant to 28 U.S.C. § 1447, which provides, in pertinent part, that "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney

fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. at 141. In the Seventh Circuit objective unreasonableness of removal generally is established only where a removal violates Seventh Circuit law as pronounced by the decisions of the Seventh Circuit Court of Appeals and the United States Supreme Court. *See Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). As a rule, it is difficult to prove that the removal of a case is objectively unreasonable so as to warrant an award of costs and expenses, including attorney fees, for improper removal, given what the Seventh Circuit Court of Appeals has acknowledged is a "dearth" of appellate authority regarding removal caused by the broad prohibition of appellate review of remand orders imposed by 28 U.S.C. § 1447(d). *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 533 (7th Cir. 2008). In this instance, however, as already has been discussed, the removal of this case as a mass action under CAFA in fact does violate established Seventh Circuit law, specifically, *Anderson*, which, with exceptions not pertinent here, expressly prohibits attempts to aggregate separate cases to satisfy the 100-plaintiff minimum required to make a case a mass action under CAFA. Accordingly, the Court will award to Plaintiffs' counsel the reasonable costs and expenses, including attorney fees, that they have incurred in seeking remand of this case to state court on the grounds that the case is not a mass action within the meaning of CAFA.[3]

---

3. Because, as already has been noted, neither the Seventh Circuit Court of Appeals nor the United States Supreme Court have addressed the validity of the fraudulent misjoinder doctrine, Plaintiffs' counsel cannot recover costs and expenses pursuant to 28 U.S.C. § 1447(c) for any time and effort that they have been obliged to expend briefing the issue of fraudulent misjoinder in this case.

To conclude, Plaintiffs' motion for remand (Doc. 12) is **GRANTED**, and pursuant to 28 U.S.C. § 1447(c) this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of federal subject matter jurisdiction.  Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 10) is **DENIED as moot**.  Not later than five (5) days from the date of entry of this Order, Plaintiffs' counsel are **ORDERED** to submit to the Court an affidavit of their just costs and any actual expenses, including attorney fees, incurred as a result of the frivolous removal of this case as a CAFA mass action.

**IT IS SO ORDERED.**

DATED: April 13, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge